IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DON ANGELO DAVIS,

        Plaintiff,                    No. CIV S-07-0509 JAM EFB P

      vs.

SGT. N. JUSTIN, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  Plaintiff alleges that, on September 16, 2005, defendant Justin used excessive force in violation of his civil rights.  Defendant Justin, the sole remaining defendant, moves for summary judgment on plaintiff's claim.   Having considered all of the papers filed by the parties, the court finds that defendant's motion must be denied.

**I. Facts**

        The following facts are undisputed, except as noted below.  During September 2005, plaintiff was an inmate housed in administrative segregation at California State Prison, Solano. Def.'s Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1; Pl.'s Sept. 17, 2008 Dec. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Dec.") ¶ 4.  Defendant was the Housing Sergeant for plaintiff's housing unit and had the authority to make and recommend housing

changes as necessary. SUF 8.

On September 16, 2005, defendant asked that plaintiff be escorted to defendant's office to discuss plaintiff's housing status. *Id.* at 10. Plaintiff was handcuffed and escorted to defendant's office where he was ordered to sit in a chair on the opposite side of defendant's desk. *Id.* at 11, 25; Def.'s Mot. for Summ. J., Ex. A, Dep. of Pl. ("Pl.'s Dep.") at 16:14-17:9.

Plaintiff and defendant discussed plaintiff's housing and yard status, and the conversation became heated. SUF 15-17. At his deposition, plaintiff testified that defendant asked the escort officer to leave the room, and subsequently, threatened to beat plaintiff because plaintiff was refusing to accept a cellmate. Pl.'s Dep. at 19:16-21, 20:6-21, 21:5-9. Plaintiff further testified that defendant then "stood up like he was going to come put his hands on me like he said." *Id.* at 23:1-8. According to defendant, however, he stood up for the purpose of ending the meeting because plaintiff was yelling and swearing at him. SUF 18, 19. Plaintiff, who admitted he was angry, then stood up and said to defendant, "F you Negro, you better not put your hands on me." *Id.* at 17, 19. According to defendant, plaintiff threatened him, and perceiving a potentially dangerous situation that could turn physical, he put plaintiff against the wall and called out for assistance. *Id.* at 20, 24, 26. Plaintiff was then removed from defendant's office and escorted back to his cell while telling defendant to "take the cuffs off and be a man." *Id.* at 21.

Plaintiff testified at his deposition that defendant came from around his desk, grabbed him by his shoulders, spun him, and slammed him against the wall. Pl.'s Dep. at 23:15-25. Plaintiff also states he had to turn his head to avoid a broken nose. Pl.'s Dec. ¶ 7. Plaintiff denies threatening or resisting defendant and states that the only reason defendant used force was because plaintiff refused to accept a cellmate. *Id*. at ¶ 8.

Plaintiff had a bruise on his right shoulder from the incident and precautionary x-rays of the shoulder revealed no injury. SUF 22, 27, 28. Plaintiff testified, however, that he received pain medications for over a year and that he still takes pain medication when his shoulder aches. Pl.'s Dec. ¶¶ 6, 9; Pl.'s Dep. at 54:16-55:5. Plaintiff also testified that his shoulder does not

bother him "too much" when he is doing general day to day activities, but that it is aggravated when he runs fast and swings his arms. Pl.'s Dep. at 54:1-10. Plaintiff also states that his shoulder has a limited range of motion and is awaiting a referral for an orthopedic evaluation and a MRI. Pl.'s Dec. ¶¶ 6, 9, 10.

**II.  Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

3

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do

so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On July 9, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III. Analysis**

Defendant argues that there was no constitutional violation because he did not use excessive force and, in the alternative, that for the same reason he is entitled to qualified immunity.

////

////

### A. Excessive Force

In order to state a claim for the use of excessive force in violation of the Eighth Amendment, plaintiff must allege facts that, if proven, would establish that prison officials applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. *Id.* at 7. Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10. Moreover, prison guards must have the ability to use that amount force necessary to maintain or restore order within a prison. However, guards may use force only in proportion to the need in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Applying these principles to the instant case, the court concludes that there is a triable issue of fact as to whether defendant's actions constituted the use of excessive force. The two witnesses to the incident, plaintiff and defendant, conflict as to certain key details and those disputed details are material to plaintiff's claims. While they describe many similar details as to the incident, they state very different accounts as to what amount of force was used and what statements were made. Plaintiff asserts that defendant threatened to beat him because he would not accept a cellmate and that defendant stood from his chair as if he was going to follow through with that threat. Pl.'s Dec. ¶ 6; Pl.'s Dep. at 20:10-21, 21:5-9. Further, plaintiff asserts

1 that defendant ensured no witnesses were present by asking the escort officer to leave the room.
2 Pl.'s Dec. ¶ 6; Pl.'s Dep. at 19:16-21, 20:6-11; Pl.'s Opp'n to Def.'s Mot. for Summ. J., Attach.
3 1. While plaintiff admits he was angry, stood up, and swore at defendant, he also states that he
4 did not threaten defendant, nor did he resist defendant. Pl.'s Dec. ¶ 8. Additionally, when
5 plaintiff stood, he said "you better not put your hands on me," which supports an inference that
6 plaintiff stood up only in reaction to defendant's purported actions. Pl.'s Dep. at 23:7-13. These
7 allegations also support an inference that defendant used force maliciously and sadistically to
8 cause harm rather than in a good-faith effort to maintain or restore discipline.

9     Defendant, on the other hand, contends that plaintiff stood up without authorization and
10 threatened defendant and that defendant had to apply force to subdue him until assistance
11 arrived. SUF 24, 26. Very plainly, if defendant's version is believed defendant will be entitled
12 to judgment in his favor. However, if plaintiff's version is believed, a jury could reasonably
13 render a verdict in favor of plaintiff. This is precisely the sort of credibility dispute that defeats
14 summary judgment. It must be noted that a jury may well find defendant "perceived a
15 potentially dangerous situation that could turn physical," SUF 20, but that is a fact for the jury to
16 determine. Moreover, this fact alone does not conclusively establish that defendant did not mean
17 to harm plaintiff by way of an excessive physical response. Again, the level of response and the
18 defendant's motivation, as well as the attendant circumstances and the amount of force, if any,
19 that was reasonable, are all questions for a jury to determine at trial. While defendant states only
20 that he "put" plaintiff against the wall, plaintiff states he was "slammed" against the wall and
21 only avoided a broken nose by turning his head. Def.'s Mot. for Summ. J., Def.'s Dec. ¶ 9; Pl.'s
22 Dec. ¶ 7. These conflicting allegations directly relate to the jury's evaluation as to whether there
23 was a need for force and its assessment of the relationship between that need and the amount of
24 force used. Because there is a dispute as to these material facts, the court must deny defendant's
25 motion for summary judgment.
26 ////

**B. Qualified Immunity**

Defendant contends that he is entitled to qualified immunity from plaintiff's claim. Def.'s Mot. for Summ. J. at 8-9. The motion as to this defense must also be denied for similar reasons. When presented with a defense of qualified immunity, the court must determine whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court must also decide whether the violated right was "clearly established."[1] *Id.* Taking plaintiff's allegations as true for purposes of these finding and recommendations, plaintiff has testified to facts describing what amounts to an excessive use force by the defendant in violation of the Eighth Amendment. Further, it would be clear to a reasonable officer that such conduct was unlawful, thereby removing the protection of qualified immunity from defendant's actions. *See Lolli v. County of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) ("by 1985, the law of this circuit would have put reasonable officers on notice that an 'unprovoked and unjustified attack by a prison guard' violated clearly established constitutional rights") (quoting *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991).

Accordingly, it is hereby RECOMMENDED that:

1. Defendant's March 6, 2008, motion for summary judgment be denied;

2. Defendant's request for qualified immunity be denied;

3. Plaintiff be directed to file and serve his pretrial statement and any motions necessary to obtain the attendance of witnesses at trial within thirty days; and,

////

---

[1] Under *Pearson v. Callahan*, __ S.Ct. __, 2009 WL 128768 (Jan. 21, 2009), the court has discretion to avoid the first prong of the *Saucier* inquiry if it appears that the constitutional right at issue is not clearly established. Because plaintiff's allegations set forth a violation of a clearly established constitutional right, the court adheres to the *Saucier* framework in deciding defendant's motion.

    4. Defendants be directed to file their pretrial statement not later than thirty days after the filing of plaintiff's statement.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 9, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE